UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAFOUZE DIALLO,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

CASE NO. 2:26-cv-00975-GJL

ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Mafouze Diallo was detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington when he initiated this action. Dkt. 1. During the pendency of these proceedings, however, ICE released Petitioner from physical custody and placed him under conditions of supervision. *See* Dkt. 14; 14-1; 17-1. On May 11, 2026, Petitioner, through counsel, filed an Amended Petition for writ of habeas corpus under 28 U.S.C. § 2241. Dkt. 19. The Amended Petition challenges conditions imposed following Petitioner's release from detention, including GPS monitoring and restrictions on travel, and seeks prospective injunctive relief relating to future re-detention and removal decisions. *Id.*

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 1

Respondents to the Amended Petition include Bruce Scott (Warden of NWIPC), Laura Hermosillo (Acting Field Office Director for ICE's Seattle Field Office), Todd Blanche (Acting Attorney General of the United States); Markwayne Mullin (Secretary of the U.S. Department of Homeland Security), and David Venturella[1] (Acting ICE Director).[2] The Amended Petition has been fully briefed and is ready for consideration by the Court. Dkts. 19, 20, 21.

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Amended Petition **IN PART** and **ORDERS** Petitioner's conditional release and other relief as set forth in the conclusion below.

## I.    BACKGROUND

The Amended Petition, which is the operative pleading in this case, principally challenges conditions of supervision imposed following Petitioner's release from NWIPC and seeks prospective relief relating to future re-detention and third-country removal decisions. Dkt. 19. Significant developments in Petitioner's detention and removal proceedings occurred after this action was filed, and those developments materially changed the claims currently before the Court. Thus, the Court briefly summarizes the relevant procedural history below to place Petitioner's current claims for relief in context.

**A.    Initial Petition**

Petitioner initiated this action on March 23, 2026, while detained at NWIPC. Dkt. 1 (hereinafter "Initial Petition"). At the time, Petitioner had received a final order of removal but had also been granted withholding of removal to his home country of Senegal. Dkt. 1 at 3; Dkt. 2 at 184–87.

---

[1] Respondent Venturella has been substituted for previously named Respondent Todd Lyons.

[2] The Parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 5.

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 2

The Initial Petition primarily challenged Petitioner's continued detention pending removal under § 1231. Specifically, Petitioner alleged that his detention had become unconstitutionally prolonged because he had not received an individualized hearing regarding his continued custody. Dkt. 1 at 19–22. Petitioner also alleged that there was no significant likelihood of removal in the reasonably foreseeable future and that his detention had therefore become impermissibly indefinite under *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.* at 22–24.

In addition to challenging his then-current detention under § 1231, Petitioner sought declaratory relief relating to his re-detention prior to the issuance of a final order of removal. *Id.* at 24. This final claim resembled those frequently raised in this District by noncitizens alleging that they were subjected to mandatory immigration detention without constitutionally adequate process during pre-removal-order detention proceedings.

**B.    TRO Proceedings and Petitioner's Release from NWIPC**

As briefing on the Initial Petition was ongoing, Petitioner's removal proceedings continued to develop. As stated, when this action commenced, Petitioner was subject to a final order of removal but had been granted withholding of removal to Senegal. Dkt. 1 at 3; Dkt. 2 at 184–87. On March 26, 2026, Petitioner received notice that Respondents intended to remove him to a third country: Ghana. Dkt. 9-5; Dkt. 8 at ¶ 11. That same day, Petitioner requested a credible-fear interview concerning removal to Ghana. Dkt. 11-1 at ¶ 10.

Although the United States Citizenship and Immigration Services ("USCIS") made a positive fear determination regarding Petitioner's removal to Ghana on April 2, 2026, Petitioner alleges he was not informed of that determination and instead learned of through materials filed in this action. Dkt. 11-1 at ¶ 11; Dkt. 7 at 2; Dkt. 8 at ¶ 13. Petitioner further alleges that, despite USCIS's positive fear determination eight-days prior (of which he was not formally notified), he

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 3

was advised on April 10, 2026, that Respondents intended to proceed with his removal to Ghana by the end of the month. Dkt. 11-1 at ¶ 12.

On April 14, 2026, Petitioner filed an Emergency Motion for a Temporary Restraining Order ("TRO") to prevent his removal to Ghana. Dkt. 11. The Court provisionally granted the requested relief to preserve the status quo and directed Respondents to respond. Dkt. 12. Before further proceedings occurred, however, Respondents notified the Court that Petitioner had been released from the NWIPC. Dkt. 14. Respondents' notice stated that Petitioner was released subject to an Order of Supervision and additional conditions, including participation in the Alternatives to Detention program, which could include GPS monitoring. Dkt. 14-1. The release materials further advised that violations of those conditions could result in Petitioner's re-detention and that Petitioner could be returned to custody should removal become practicable. *Id.*

Following Petitioner's release, Petitioner withdrew his TRO Motion. Dkt. 15. The Court thereafter directed Petitioner to show cause why the action should not be dismissed as moot. Dkt. 16. Petitioner responded that the conditions imposed following his release and the possibility of future detention preserved a live controversy. Dkt. 17. The Court subsequently permitted Petitioner to file an amended petition addressing those developments. Dkt. 18.

**C.      Amended Petition**

Petitioner thereafter filed the operative Amended Petition. Dkt. 19. The Amended Petition no longer challenges Petitioner's prior physical confinement and, instead, challenges conditions imposed following his release from the NWIPC, including GPS monitoring and other restrictions. Dkt. 19 at ¶¶ 45–47, 54–6. Petitioner alleges the GPS monitoring condition was imposed without any individualized review, justification, or opportunity to be heard regarding the necessity of that condition. *Id.* Petitioner further alleges the electronic monitoring device

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 4

imposes physical, psychological, and stigmatic burdens. *Id.* The Amended Petition also seeks prospective relief relating to future re-detention and removal decisions. *Id.* at 25–28.

Respondents filed a Response, arguing the conditions of Petitioner's release are lawful and, in any case, they do not present a live controversy for these proceedings. Dkt. 20. Respondents represent that Petitioner's release followed a "determination" and "expedited approval" by the Enforcement and Removal Operations ("ERO"), Headquarters Removal and International Operations ("HQ RIO"), but do not submit evidence of that determination or identify any individualized review specifically directed to the conditions imposed upon Petitioner's release. *Id.* at 3, 9–10. Petitioner thereafter filed a Reply and submitted evidence showing that, since his release, he has repeatedly attempted to notify immigration officials regarding changes in his employment and alleged malfunctions of his GPS monitoring device. Dkt. 21; Dkt. 21-1. According to Petitioner, those communications have gone unanswered. *Id.*

With these submissions, the Amended Petition is fully briefed and ready for consideration by the Court.

## II.   HABEAS STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, petitioners have the burden of demonstrating that there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 5

## III.    DISCUSSION

In his Amended Petition, Petitioner challenges the legality of his conditions of supervision, most notably the requirement that he submit to GPS monitoring, which Respondents allegedly imposed without individualized assessment, justification, or meaningful opportunity to challenge. Dkt. 19 at 17–21. Petitioner also seeks forward facing relief on two grounds. First, Petitioner seeks relief related to his possible future re-detention. *Id.* at 25–26. Second, Petitioner seeks an order enjoining Respondents from removing him without legally required notice and process. *Id.* at 9, 25–26.

Respondents argue that the Amended Petition should be denied in full because Petitioner is no longer "in custody" for purposes of seeking habeas corpus relief. Dkt. 20 at 4–5. Respondents alternatively argue that Petitioner's case is distinguishable from other cases finding due process violations where ICE required noncitizens to submit to GPS monitoring as a condition of supervised release. *Id.* at 5–10. Finally, Respondents argue that Petitioner's request to enjoin his future re-detention is speculative and not ripe for review. *Id.* at 10–12. Respondents do not specifically oppose or address Petitioner's request for relief regarding third-country removal. *See id.*

### A.    Petitioner Remains "In Custody" for the Purposes of his Habeas Challenge

Petitioner first argues the conditions of his supervision, particularly the requirement that he wear an ankle monitor and submit to GPS monitoring, render him "in custody" for the purposes of his habeas challenge. Respondents disagree, claiming the conditions of Petitioner's release are not "so restrictive" as to render him "in custody." Dkt. 20 at 4–5.

A court may grant habeas corpus relief to any individual "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has "very liberally construed the 'in custody' requirement." *Maleng v. Cook*, 490 U.S. 488,

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 6

492 (1989). This liberal construction provides that "[a] person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'" *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)).

Here, it is undisputed that Petitioner is required to submit to GPS monitoring and adhere to restrictions on travel, reporting requirements, and other conditions of supervision. Dkt. 19 at ¶¶ 45–47, 54–57; Dkt. 17-1. As this combination of restrictions is not shared by the public generally, the Court concludes that Petitioner is "in custody" for purposes of seeking habeas corpus relief. This conclusion is echoed in decisions reached by district courts across the country. *See Batz Barreno v. Baltasar*, 816 F. Supp. 3d 1255, 1258 (D. Colo. 2026) ("ICE's use of a GPS monitor and other measures instead of a ball and chain makes no difference."); *Patel v. Kaiser*, No. 25-CV-07667-WHO, 2025 WL 4110423, at *3 (N.D. Cal. Oct. 9, 2025) (finding a noncitizen released on an OSUP and required to "wear an ankle monitor so that ICE could track his every location" remained "in custody"); *Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 68 (D. Mass. 2025) (noncitizen subject to GPS monitoring, regular reporting, home visits, curfew, and geographic strictions was "in custody").

Even assuming *arguendo* that the conditions of Petitioner's release did not satisfy the "in custody" requirement, that would not require dismissal of the Amended Petition as Respondents suggest. Rather, a habeas petition continues to present a live controversy, even after a petitioner's release, if there is "some remaining 'collateral consequence' that may be redressed by success on the petition." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

Petitioner here was not subject to GPS monitoring and other conditions prior to his detention at NWIPC and, although Petitioner has now been released from physical confinement,

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 7

the new conditions of his release qualify as "collateral consequences" redressable by success on his Amended Petition. *See, e.g.*, *Palacio v. Hermosillo*, No. C25-1983-RSM-MLP, 2025 WL 4033287, at *2 (W.D. Wash. Dec. 22, 2025), *report and recommendation adopted sub nom.*; *Quiva Palacio v. Wamsley*, No. C25-1983-RSM-MLP, 2026 WL 84930 (W.D. Wash. Jan. 12, 2026); *Barrios-Martinez v. Bondi*, No. SA-26-CA-00493-XR, 2026 WL 964318, at *2 (W.D. Tex. Apr. 8, 2026) (finding GPS monitoring continued to present a live controversy following release); *Lu v. Joyce*, No. 2:26-CV-00041-SDN, 2026 WL 352447, at *2 n.3 (D. Me. Feb. 9, 2026) (same).

Accordingly, Court concludes that Petitioner remains "in custody" for the purposes of his habeas challenge and, in any case, the GPS monitoring condition of his release presents a live controversy for these proceedings.

**B.      Petitioner's Continued Restraint Violates Due Process**

Next, Petitioner contends that Respondents violated his due process rights by imposing GPS monitoring as one of several release conditions without any individualized review, justification for that condition, or meaningful opportunity to challenge it. Dkt. 19 at ¶¶ 45–47, 54–56. The Court agrees.

As an initial matter, Respondents argue that Petitioner "cannot" raise a "due process challenge[] to the conditions of his supervision," because his detention and release are governed by 8 U.S.C. § 1231, rather than 8 U.S.C. § 1226. Dkt. 20 at 9. Respondents' ostensible suggestion that a noncitizen subject to detention or supervision under § 1231 may not warrant protection under the Due Process Clause is simply contrary to law. Statutory or regulatory detention authority does not abrogate Respondents duty to adhere to the requirements of the Due Process Clause.

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 8

Having concluded that Petitioner's claim is properly analyzed under the Due Process Clause, the Court turns to the familiar balancing framework set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts consider (1) the private interest at stake; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Id.* at 335; *see also Palacio*, 2025 WL 4033287, at *2–3 (applying *Mathews* to ICE's imposition of GPS monitoring requirement, finding due process violation, and ordering release from the condition).

1.      Private Interest

The first *Mathews* factor considers the private interest affected by the challenged governmental action. *Mathews*, 424 U.S. at 335. Although Petitioner is no longer physically detained at the NWIPC, the conditions of his release nevertheless constitute an elevated burden on his liberty interest. The Supreme Court has long recognized that the Due Process Clause protects not only freedom from incarceration but also freedom from "**other forms of physical restraint**." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting that physical restraint "lies at the heart of the liberty that Clause protects") (emphasis added).

Here, Petitioner is subject to continuous electronic GPS monitoring and remains subject to other restrictions on his movement such as check-ins and reporting requirements. Dkt. 17-1; Dkt. 19 at ¶¶ 45–47, 54–56. Petitioner further alleges that the GPS ankle monitor imposes physical, psychological, and stigmatic burdens. *Id.* at ¶ 54. While these restraints, as a whole, are considerably less severe than physical detention, they nevertheless constitute a substantial deprivation of liberty. *Palacio*, 2025 WL 4033287, at *2 (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)). Accordingly, the first *Mathews* factor weighs in Petitioner's favor.

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 9

2.    Risk of Erroneous Deprivation

The second *Mathews* factor considers "the risk of an erroneous deprivation" under the procedures used and the probable value of additional procedural safeguards. *Mathews*, 424 U.S. at 335. This factor also favors the Petitioner.

Respondents argue that this case is distinguishable from decisions finding due process violations where ICE requires GPS monitoring after a noncitizen had already been ordered released by an Immigration Judge ("IJ"). Dkt. 20 at 6 (collecting cases). In those cases, courts emphasized that ICE effectively altered or supplemented the IJ's release conditions without seeking review of the IJ's order through the appropriate administrative channels. *See, e.g.*, *Orellana Juarez*, 788 F. Supp. 3d at 69; *N- N- v. McShane*, 813 F. Supp. 3d 496, 502 (E.D. Pa. 2025). Respondents contend that because Petitioner was not ordered released by an IJ, he cannot show that Respondents violated due process when they imposed the conditions of his release. This argument misses the mark.

Instead of serving to distinguish these cases, this argument highlights the extent of the procedural risk in the case at bar. Instead of receiving different, and therefore distinguishable, procedural protections than the litigants in *Orellana Juarez and McShane*, Petitioner received materially *less* process here.

The central concern underlying the cases invoked by Respondents was not merely whether ICE altered an IJ's release order. Rather, it was whether ICE imposed significant restraints on a noncitizen's liberty *without affording adequate procedural protections*. Here, Petitioner did not receive a custody hearing before an IJ and was not ordered released by an IJ. There is no contention that Petitioner has ever been afforded an opportunity to present evidence regarding whether he poses a flight risk or danger to the community, nor is there evidence that he has had an opportunity to challenge any determination that he does. Indeed, Respondents identify

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 10

no review, hearing, individualized assessment, or other procedure specifically directed to the decision to impose GPS monitoring as a necessary measure to mitigate a risk of flight or danger.

The record instead reflects only that Respondents released Petitioner from detention and notified him that he *may* be required to participate in the Alternatives to Detention program, which could include GPS monitoring. Dkt. 14-1. Respondents subsequently represented that Petitioner's release followed an ERO HQ RIO determination. Dkt. 20 at 9. But Respondents provide no evidence explaining whether that determination specifically addressed the conditions of Petitioner's release, what facts were considered, who made the decision, or whether any individualized assessment of Petitioner's circumstances occurred before the conditions of his release were imposed. Nor do Respondents identify any mechanism through which Petitioner could administratively challenge or obtain review his release requirements. Indeed, Petitioner's notice of release and OSUP do not include any notification of his right to appeal, challenge, or otherwise seek review of his current custody arrangement. *See* Dkt. 14-1; 17-1. *Palacio*, 2025 WL 4033287, at *3 (lack of opportunity to appeal or review GPS monitoring condition increased risk of erroneous deprivation).

Petitioner does not dispute that Respondents complied with the applicable regulatory requirements outlined in 8 C.F.R. § 241.13 when imposing the conditions of his release. Dkt. 19 at 21–22. Instead, Petitioner contends that, despite Respondents' uncontested regulatory compliance, he was not afforded the process due to him as a matter of constitutional law. *Id.* at 19–24. The Court agrees.

As stated above, the government's detention authority must always be wielded in a manner that complies with due process. *See Arroyo Silva v. Hermosillo*, No. 2:26-CV-00179-GJL, 2026 WL 445003, at *5 (W.D. Wash. Feb. 17, 2026) ("[C]ourts in this District have made clear, Respondents' statutory authority to detain does not validate an invasion of Petitioners'

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 11

liberty interests without constitutionally guaranteed process."); *Zadvydas,* 533 U.S. at 699 (interpreting the government's detention authority under § 1231 "to avoid a serious constitutional threat"). Thus, while implementing regulations may require that they provide *more*, Respondents may not lawfully provide *less*. *Van Nguyen v. Bondi*, 818 F. Supp. 3d 1235, 1242 (W.D. Wash. 2026) ("[E]ven assuming full compliance by ICE with [8 C.F.R. § 241.13], those limited procedures do not provide the process due under the Fifth Amendment…").

Irrespective of Respondents' regulatory compliance, the high risk of erroneous deprivation resulting from the lack of process afforded to Petitioner is further supported by the record in this case. In particular, before the events giving rise to the Amended Petition, immigration officials released Petitioner on his own recognizance. Dkt. 9-3 (Order of Release on Recognizance dated Dec. 18, 2023). Such a release necessarily reflects a prior determination that Petitioner did not present a danger to the community and was likely to appear for future proceedings. *See Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *10 (W.D. Wash. Mar. 11, 2026) (citing 8 C.F.R. § 1236.1(c)(8)). While Respondents urge that this prior determination was made before Petitioner received a final order of removal, they fail to show why this circumstance automatically justifies the additional conditions they imposed without affording any further process. *Palacio*, 2025 WL 4033287, at *3 ("[T]he government [previously] found Petitioner should be released without an ankle monitor. Respondents have not shown a new flight risk, danger to the community, or any other reason for electronic monitoring, nor have they shown any burden in providing a hearing.").

The Court therefore finds that additional procedural safeguards—including notice of the reasons for GPS monitoring and an opportunity to challenge those reasons—would have significant value in reducing the risk of erroneous deprivation of liberty here. Under the circumstances presented here, the absence of any such procedures created a substantial risk of

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 12

erroneous deprivation of Petitioner's liberty. Accordingly, the second *Mathews* factor favors Petitioner.

        3.      <u>Countervailing Government Interest</u>

The third *Mathews* factor considers countervailing government interests, including the administrative burden associated with additional procedural safeguards. *Mathews*, 424 U.S. at 335. Respondents assert no governmental interest in their briefing. *See* Dkt. 20. Nevertheless, the Court acknowledges there are strong governmental interests in the efficient administration of immigration laws, including those regarding detention of noncitizens. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). But the relevant question is not whether Respondents have a general interest in supervising Petitioner or in ensuring his presence for any future removal. Rather, the question is whether Respondents have an interest sufficient to justify Petitioner's restraint *without* any individualized review, notice of the reasons for the restraint, or meaningful opportunity for Petitioner to challenge the conditions of his release.

On the current record, the Court finds that Respondents do not. Respondents have not shown that Petitioner presents a particularized risk of flight, poses a danger to the community, or engaged in conduct warranting heightened supervision. *Francois v. Wamsely*, 2025 WL 3063251, at *5 (W.D. Wash. Nov. 3, 2025) (third *Mathews* factor weighs in petitioner's favor where respondents failed to show flight risk, danger, or any burden due to hearing). Nor have Respondents identified any administrative burden associated with providing notice of the reasons for GPS monitoring or an opportunity to challenge that condition. *See Palacio*, 2025 WL 4033287, at *3 ("This Court finds that the government's interest in imposing an ankle monitor without a pre-deprivation hearing or any other procedure is low") (citing *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, at *8 (W.D. Wash. Oct. 7, 2025)). As stated, Respondents do not

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 13

identify what facts were considered in imposing the GPS monitoring requirement, or what process, if any, preceded that decision.

Accordingly, while the Government maintains a substantial interest in enforcing the immigration laws generally, Respondents have little, if any, legitimate interest in imposing GPS monitoring as a condition of supervision without the provision of any procedural safeguards or even revealing the existence of such safeguards. *See, e.g.*, *Kumar v. Noem*, No. 2:26-CV-00239-TLF, 2026 WL 411833, at *3 (W.D. Wash. Feb. 13, 2026) ("The Court thus finds the arbitrary placement of a GPS monitor, without sufficient evidence of a danger to the community or a flight risk, would violate due process."); *Singh v. Noem*, No. C26-0302JLR, 2026 WL 879247, at *5 (W.D. Wash. Mar. 31, 2026) (same); *Chicoze-Ezechi v. Noem*, No. 2:26-CV-00145-BAT, 2026 WL 265733, at *2 (W.D. Wash. Feb. 2, 2026) (same). Thus, the third *Mathews* factor does not favor Respondents and weighs neutrally on Petitioner.

Taken together, the *Mathews* factors demonstrate that the process afforded to Petitioner was constitutionally insufficient. The Court therefore concludes that Respondents' imposition of GPS monitoring and other restraints on his movement as conditions of Petitioner's release without individualized review, notice of the justifications for the conditions, or a meaningful opportunity to be heard and challenge his current custody arrangement violates due process.

**IV.    REMEDY**

Having determined that Petitioner was subject to GPS monitoring and other release conditions without the constitutionally required process, the Court now determines the appropriate remedy for his unlawful restraint. As discussed below, the Court **GRANTS** Petitioner's request for an order of conditional release from certain conditions of supervision—namely, the GPS monitoring requirement and restrictions on travel. Dkt. 19 at 27. Additionally, the Court **GRANTS IN PART** Petitioner's other requests for injunctive relief. *Id.* at 25–28.

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 14

**A.     Conditional Release**

As noted, "the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008)). After issuing a conditional writ, a district court retains jurisdiction to ensure compliance with the writ and may order unconditional release if the government fails to comply with the initial habeas order. *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020).

Accordingly, the Court **GRANTS** Petitioner's request for a conditional writ requiring his **IMMEDIATE RELEASE** from certain conditions of supervision **UNLESS and UNTIL** Respondents provide him with notice and an opportunity to be heard as outlined in the conclusion below.

**B.     Injunctive Relief**

With regard to Petitioner's requests for prospective injunctive relief, habeas corpus relief is "at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995). The equitable roots of habeas corpus are embodied by "the statutory command that the judge, after granting the writ and holding a hearing of appropriate scope, [shall] 'dispose of the matter as law and justice require.'" *Fay v. Noia*, 372 U.S. 391, 438 (1963) (quoting 28 U.S.C. § 2243). A habeas court is thus authorized to "fashion appropriate relief other than immediate release," *Preiser*, 411 U.S. at 487, in order to ensure an effective remedy for unlawful detention. *Cf. Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) ("Once a [constitutional] right and a violation have been shown, the

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 15

scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

These equitable principles authorize courts not only to remedy unlawful detention through release, but also to craft forward-looking relief necessary to prevent recurrence of the constitutional violation. Where a petitioner demonstrates a cognizable danger of future harm, permanent injunctive relief falls within the breadth and flexibility inherent in habeas equitable powers. *See Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) ("The necessary determination [for granting a permanent injunction] is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.") (quotations omitted).

    1.    <u>Petitioner's Release May Not be Revoked or Modified Based on Any Perceived Violation of the GPS Monitoring Condition</u>

First, Petitioner requests broad relief from future re-detention decisions. Dkt. 19 at 25–27. The Court concludes that only a limited form of this relief is supported by the record in this case.

Specifically, Petitioner has shown that he faces a cognizable danger of recurrent constitutional injury unless the Court prohibits Respondents from basing any future detention decisions on Petitioner's noncompliance or perceived noncompliance with the GPS monitoring condition. Petitioner alleges the GPS monitoring technology malfunctioned on multiple occasions while he was subject to the condition and that efforts to consult with immigration officials about these issues have been unsuccessful. Dkt. 21-1.

There is no dispute that a violation of a condition of release may provide grounds for Respondents to revoke Petitioner's release and re-detain him. Because the Court has determined that the GPS monitoring condition and other conditions were imposed without constitutionally adequate process, such re-detention would risk perpetuating the same constitutional injury

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 16

identified in this Order. Thus, a grant of limited injunctive relief to guard against that risk is warranted.

However, Petitioner's request to broadly enjoin any future re-detention decision is not similarly supported by the record. Given the varying circumstances that may warrant Petitioner's future re-detention, determining what specific process will be owed in all circumstances is not possible or appropriate on the current record. Thus, the Court finds it sufficient to prohibit Respondents from modifying Petitioner's release or re-detaining him based on any actual or perceived violation of the GPS monitoring condition. The Court declines, however, to impose broader restrictions on all future re-detention decisions.

Therefore, the Court **GRANTS IN PART** Petitioner's request for prospective injunctive relief related to his future re-detention as outlined in the conclusion below.

2.    Petitioner is Entitled to Notice and Process Prior to Any Third Country Removal

Finally, Petitioner requests that the Court prohibit Respondents from executing his removal without first providing legally required notice and process. Dkt. 19 at 25–26, 28. Respondents do not respond this aspect of the Amended Petition, and the Court finds that Petitioner is entitled to the requested relief.

As Petitioner has been granted withholding of removal from his home-country of Senegal, the only remaining lawful removal of Petitioner would be to a third country. "A number of courts in this district have recently addressed challenges to ICE's current third-country removal policy and have concluded that the policy violates due process." *Machuca Del Cid v. Mullin*, No. C26-1271-SKV, 2026 WL 1295891, at *5 (W.D. Wash. May 12, 2026) (citing *Baltodano v. Bondi*, No. C25-1958-RSL, 2025 WL 3484769, at *6 (W.D. Wash. Dec. 4, 2025), *Abubaka v. Bondi*, No. C25-1889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025), and *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727–29 (W.D. Wash. 2025)). Given the speed at

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 17

which third-country removal can be executed once the government decides to employ its policy, courts consider requests to enjoin third-country removal to be nonspeculative and ripe for adjudication even without evidence of active intent to pursue such removal for a particular noncitizen. *See, e.g.*, *Savinsky v. Bondi*, No. 2:26-CV-00835-TL, 2026 WL 1191017, at *11 (W.D. Wash. May 1, 2026) (enjoining third-country removal without notice or process and rejecting the Government's argument that "[t]here is no indication at this time that ICE is seeking to remove Petitioner to a third country.").

Central to these decisions are concerns that, under the current policy, a noncitizen could be identified for removal to a third country and swiftly removed without the "chance to express a reasonable fear of persecution or torture or seek judicial intervention" in clear violation of the United States Constitution. *Le v. Bondi*, No. 25-cv-2454-KKE, 2026 WL 309239, at *7 (W.D. Wash. Feb. 5, 2026); *see also Kumar v. Wamsley*, No. 25-cv-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025) ("Where alleged harm 'is directly traceable to a written policy …there is an implicit likelihood of its repetition in the immediate future.'") (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007)); *but see Edin v. Blanche*, No. C26-1208-MLP, 2026 WL 1256141, at *6 (W.D. Wash. May 7, 2026) (denying request for injunctive relief as unripe absent individualized evidence suggesting a noncitizen's removal to third country is imminent).

The concerns animated in the record give rise to a cognizable danger of future harm. Petitioner's removal to a third country where he had a *recognized* fear of persecution appears to have been narrowly avoided only by his filing of a TRO with the Court. Dkt. 11 (filed at 4:23 PM PDT on April 14, 2026). Indeed, less than 48-hours after Petitioner filed his TRO, Respondents released Petitioner from NWIPC. Dkt. 14 (Petitioner released at 12:32 PM PDT on April 16, 2026). While Petitioner's release suggests that Respondents have ceased their

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 18

immediate efforts to remove Petitioner to a third country, Respondents' prior submissions maintain that "ERO is continuing to pursue other options for third country removal." Dkt. 8 at ¶ 14.

Respondents have not tendered any further submissions regarding these continuing efforts and offer no objection to Petitioner's request for an order prohibiting his removal without first providing legally required notice and process. And, in light of Respondents' catastrophic near miss, the Court perceives no reason to deny this request.

Therefore, the Court **GRANTS** Petitioner's request for prospective injunctive relief related to his future third-country removal as outlined in the conclusion below.

## V.   CONCLUSION

For the foregoing reasons, Petitioner's Amended Petition (Dkt. 19) is **GRANTED IN PART** and the Court **ORDERS** the following:

(1)    Respondents **SHALL immediately** release Petitioner Mafouze Diallo from the GPS monitoring condition and other restrictions on his travel and **SHALL remove** any electronic monitoring device from his person **within seven days of this Order;**

(2)    Respondents **MAY NOT REIMPOSE** these same conditions **UNLESS** and **UNTIL** Petitioner is provided notice of the reasons for the conditions and an opportunity to challenge those conditions before an immigration judge;

(3)    Respondents **SHALL** file a declaration with the Court confirming compliance with the above requirements **within eight days of this Order;**

(4)    Until Respondents provide notice and an opportunity to be heard to Petitioner as directed above, Respondents **SHALL NOT** rely on Petitioner's actual or perceived failure to comply with the GPS monitoring condition as a basis for any future re-detention, revocation or modification of his release, or imposition of release conditions; and

(5)    Respondents **SHALL NOT** remove Petitioner without notice and an opportunity to be heard as required by the INA, implementing regulations, and the United States Constitution.

Finally, the Court will entertain post-judgment requests for attorney's fees. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 26th day of June, 2026.

_____
Grady J. Leupold
United States Magistrate Judge

ORDER GRANTING AMENDED PETITION FOR
WRIT OF HABEAS CORPUS - 20